# United States District Court
# Central District of California

| | |
|---|---|
| STEPHANIE BRIEST,<br><br>            Plaintiff,<br><br>    v.<br><br>KNOT STANDARD LLC; et al.,<br><br>            Defendants. | Case No. 2:19-cv-09630-ODW(SSx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REMAND AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [10]** |

## I.    INTRODUCTION

Plaintiff Stephanie Briest ("Briest") moves to remand this action to state court based on lack of diversity jurisdiction, and in the alternative, moves for leave to file an amended complaint to join Christine Ouzounian ("Ouzounian") and Cheyenne Cali ("Cali") as Defendants. (Mot. to Remand and for Leave to Am. Compl. ("Mot.") 5, ECF No. 10.) For the reasons discussed below, the Court **GRANTS** Briest's Motion to Remand ("Motion") and, therefore, **DENIES** as moot Briest's Motion to Amend.[1]

## II.    FACTUAL BACKGROUND

Briest filed this action ("Complaint") against Knot Standard LLC, Knot Standard Los Angeles, Knot Standard, Alicynne Sher ("Sher"), and Liz Wendler ("Wendler")

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

(collectively, "Defendants") in Superior Court. (Mot., Ex. 1 ("Compl.") ¶ 2, ECF No. 10-1.) Briest alleges thirteen causes of action against Defendants related to her employment and "constructive termination." (Compl. ¶¶ 8–21.) On November 8, 2019, Defendants removed the matter to this Court based on diversity jurisdiction. (*See generally* Notice of Removal ("Removal"), ECF No. 1)

Briest asserts that she is a resident of California. (Compl. ¶ 1.) Whereas, Defendants assert that Knot Standard LLC is a limited liability company domiciled in Florida and Virginia, Sher is a resident of New York, Wendler is a resident of the Texas and Knot Standard and Knot Standard Los Angeles are "improper parties" because they are "not valid or existing entities." (Removal ¶¶ 18, 29–31, 33.) According to Briest's Complaint, she seeks damages "exceed[ing] $25,000" but does not list any other specific damages. (Compl. 22, Prayer). In her Motion, Briest again does not assert a specific amount in controversy but asserts that Defendants have provided only a "blanket contention" that the relief she seeks would exceed $75,000. (Mot. 17.)

However, Defendants assert in their Removal, and re-allege in their Opposition, that a good faith value of the relief sought "far exceeds" $75,000. (Removal ¶ 49.; Opp'n to Mot. ("Opp'n") 6–7, ECF No. 11.) Accordingly, the Court must now determine whether it must remand the matter.

### III. LEGAL STANDARD

A civil action may be removed to federal court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A district court has original jurisdiction over a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." 28 U.S.C. § 1332. "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). "The strong presumption against removal jurisdiction means that the defendant has the burden of establishing that

removal is proper." *Hunter v. Philip Morris U.S.A.*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## IV. DISCUSSION[2]

### A. Amount in Controversy

Briest demands only an amount that "exceeds $25,000" in his prayer for relief. (Compl. 22.) Based on damages sought, including lost wages and future earnings, emotional distress, and punitive damages, Defendants assert that the amount in controversy exceeds $75,000. (Removal ¶ 40–48.) More specifically, Defendants assert that Briest's estimated bi-weekly earnings of $3,333 applied to 52-week standard would bring the amount in controversy to $86,666.58. (Removal ¶ 42.) Defendants do not allege a specific amount regarding emotional distress and punitive damages, but cite cases containing jury verdicts alleged to be factually sufficient to show the amount in controversy exceeds $75,000. (Removal ¶¶ 43–45.) Finally, Defendants estimate that $300 per hour for a minimum of 250 hours in attorneys' fees—a "conservative" estimate for the case at hand—would exceed $75,000. (Removal ¶ 48.)

Briest disagrees and asserts that Defendants have provided no "summary judgment-style" evidence in support of its removal. Therefore, the amount of controversy is in dispute.

If the amount in controversy is unclear or ambiguous from the face of the complaint, the defendant must provide facts to establish jurisdiction by a preponderance of the evidence. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Additionally, "[i]n the event that the plaintiff [contests] the defendant's allegations . . . the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *see also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Proof of the amount in controversy may be shown

---

[2] Defendants also requests judicial notice of several documents in support of its Motion. (*See* Req. for Judicial Notice, ECF No. 12.) However, as the documents are unnecessary to the Court's resolution of the Motion, the Court **DENIES** as moot Defendant's Request for Judicial Notice.

through summary judgment-type evidence. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018); s*ee also Ibarra*, 775 F.3d at 1196 ("[P]arties may submit . . . affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy . . . .") (internal citation omitted). Here, the amount in controversy is unclear from the Complaint, and Briest contests Defendants' alleged amount in controversy. Therefore, Defendants must show by a preponderance of the evidence that the amount in controversy exceeds $75,000.

### 1. Lost Wages and Future Earnings

A plaintiff alleging a violation of the Fair Employment and Housing Act ("FEHA") may seek back pay and front pay. *Andrade v. Arby's Rest. Grp., Inc.*, 225 F.Supp.3d 1115, 1139–40 (N.D. Cal. 2016). Accordingly, the Court may consider back pay and front pay damages to determine the amount in controversy. *Id*.

Here, Defendants argue that Briest's wages alone meet the amount in controversy requirement. (Opp'n 7.) Based solely on the declaration of Matthew Mueller, founder and president of Knot Standard LLC, Defendants approximate Briest's earnings at $3,333.33 every two weeks. (*See* Removal, Decl. of Mathew Mueller ("Mueller Decl.") ¶ 2, ECF No. 1-5.) Accordingly, Defendants assert that Briest's lost wages for a one-year period is $86,666.58 (52 weeks x $3,333). (Removal ¶ 42.) However, Mr. Mueller's declaration is not substantiated by any record or proof of payment and, therefore, yields limited probative value. Absent more reliable, summary judgment-style evidence, Defendants have failed to show that Briest's wages should be used as a basis for determining the amount in controversy. *See Farley v. Dolgen Cal., LLC*, 2017 WL 3406096, at *3 (E.D. Cal. Aug. 8, 2017) ("Without corroborating documents, [the reporting analyst's] declaration, on which defendant heavily relies, is speculative and self-serving").

### 2. Damages for Emotional Distress

Emotional distress damages may be considered in the amount in controversy even where the amount is vague in the pleadings. *Richmond v. Allstate Ins. Co.*, 897 F. Supp.

447, 450 (S.D. Cal. 1995). "A defendant may introduce evidence of jury verdicts in cases involving analogous facts to establish probable emotional distress damages." *Rodriguez v. Home Depot, U.S.A., Inc.* No. 16-cv-01945-JCS, 2016 WL 3902838, at *5 (N.D. Cal. 2016). However, while "jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue." *Aguilar v. Wells Fargo Bank, N.A.*, No. EDCV 15-1833-AB (SPx), 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015). Nonetheless, "district courts appear to require only 'analogous' or even 'similar' examples before considering jury verdicts for the amount in controversy analysis." *Avila v. Kiewit Corp.*, No. CV 19-5740-MWF-JPR, 2019 WL 4729641, at *3 (C.D. Cal. Sept. 26, 2019). Accordingly, the Court may only consider jury verdicts from analogous or similar cases when determining damages for emotional distress. *See id.*

Defendants cite to several cases to establish that Briest's claims of emotional distress satisfy the amount in controversy. (Removal ¶ 44.) However, Defendants fall short in generating adequate similarities between the cases cited and the instant case. First, Defendants list similar claims and jury verdicts but provide no analysis or context analogizing the facts of those claims to the instant matter. Second, the cited cases are clearly distinguishable. For instance, Defendants' lead case *Johnson v. BSI Consultants Inc.*, involves the defendant allegedly inducing the plaintiff into employment, causing him to relocate his family on two occasions, and making false representations about the duration, compensation, and existence of employment. 26 Trials Digest 2d 23, 1996 WL 763115 (Cal. Super. Sept. 13, 1996). Defendants also cite *Gary v. Nichols*, involving allegations of sustained sexual harassment towards an employee over the course of a year. 45 Trials Digest 8th 7, 2004 WL 3576547 (Cal. Super. Dec. 10, 2004).

Here, Briest's factual allegations are limited to criticisms about her ability to communicate clearly and feeling retaliated against for bringing to light various workplace non-compliances. (Compl. ¶¶ 5–7.) Unlike in *Johnson* and *Gary*, Briest alleges no claims of employment misrepresentation, sexual harassment, or other

relatable facts that could reliably compel a similar jury verdict. Defendants claims are, thus, speculative, and fail to show that damages sought for emotional distress should be considered in determining the amount in controversy. *See Daley v. Walmart Stores, Inc.*, No. SA CV 18-0518-DOC (GJSx), 2018 WL 3104630 (C.D. Cal. 2018) (holding that because the defendants cited cases with distinguishable facts, the defendants failed to establish by a preponderance of the evidence that the emotional distress damages would be adequate to satisfy the amount in controversy); *Miller v. Michigan Millers Ins. Co.*, No. C-96-4480 MHP, 1997 WL 136242 (N.D. Cal. 1997) ("[I]n the absence of any papers suggesting [the] claim will yield an adequate amount in controversy, the court will not speculate as to the damages potentially embodied in the plaintiffs' vague request for emotional distress."). The Court finds that Defendants fail to support their estimated liability for emotional damages, and thus, the Court does not consider the figure in evaluating the amount in controversy.

**3. Punitive Damages**

Here, the Parties similarly dispute whether Defendants have introduced jury verdicts from factually analogous cases to support its conclusion that a punitive damage verdict would put the amount in controversy over the jurisdictional threshold.

"[P]unitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). However, a defendant must introduce evidence of jury verdicts in cases involving analogous or similar facts when the plaintiff does not specify a particular amount. *Ponce v. Medical Eyeglass Center, Inc.*, No. S:15-cv-004035-CAS (JEMx), 2015 WL 4554336, at *4 (C.D. Cal. 2015) (internal quotation marks omitted). Accordingly, when a defendant cites to cases that do not contain sufficiently analogous or similar facts, then the Court cannot consider defendant's punitive damages estimates. *Aguilar*, 2015 WL 6755199, at *5.

Here, Defendants merely cite two cases for the purpose of claiming that punitive damages should be considered in determining the amount in controversy. Defendants fail to provide factual analysis or indicate how the cases are analogous to the instant

case. On this basis alone, the Court finds that Defendants have not met is burden for showing how punitive damages should be considered in the amount in controversy. Moreover, even broad stroke analysis reveals that the cited cases are distinguishable to the facts at hand. For example, Defendant cites *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334. In *Aucina*, the court considered whether punitive damages exceeded $75,000. The Court indicated that as the defendant was a Fortune 500 Company and the purpose of punitive damages is to deter others from similar conduct, it is apparent that the punitive damages alone would satisfy the amount in controversy requirement.

However, here, Defendants are not Fortune 500 Companies, nor do Defendants provide evidence purporting similar financial resources as a Fortune 500 Company. Thus, Defendants have failed to adequately cite analogous case law supporting punitive damages in this case and the Court does not find that the punitive damages could satisfy the amount in controversy requirement.

**4. Attorney's Fees**

Additionally, Defendants assert that Briest's attorneys' fees, alone, would exceed the $75,000 requirement for diversity jurisdiction. (Removal ¶ 48.) Briest argues not so. Briest asserts that the Court may not consider its future attorneys' fees because Defendants have failed to satisfy their burden of proof. (Mot. 17–18.) Accordingly, the Court considers whether Defendants have met their burden of proof.

The Ninth Circuit recently resolved a district court split and determined that a "defendant may attempt to prove that future attorney's fees should be included in the amount in controversy." *Fritsch*, 899 F.3d at 794. Thus, as with lost wages and future earnings, proof of attorneys' fees must be made with "summary-judgment-type evidence." *Id*. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy [the] burden of proof." *Id*. at 795. "[D]istrict courts may [] rely on their knowledge of customary rates and their experience concerning reasonable and proper fees." *Id*. (internal quotation marks omitted).

Defendants argue that Briest's attorneys' fees would likely exceed $75,000 by applying a "conservative" rate of $300 per hour at over 250 hours. (Removal ¶ 48.) Defendants, however, do not provide the required summary judgment-type evidence to substantiate this amount. Thus, the Court shall not consider attorneys' fees in determining the amount in controversy.

Accordingly, The Court finds that Defendants have failed to substantiate that the amount in controversy exceeds $75,000.

## B. Complete Diversity

Because Defendants have failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court does not reach the issue of complete diversity.

## V. CONCLUSION

Defendants have failed to present the required summary judgment-type evidence to substantiate that the amount in controversy exceeds $75,000. Therefore, this Court lacks subject-matter jurisdiction over this action, and for this reason, the Court **GRANTS** Briest's Motion to Remand. The Court **DENIES** as moot her Motion for Leave to Amend. (ECF No. 10.) Accordingly, the Court **REMANDS** the action to the Superior Court of the State of California, County of Los Angeles, 111 North Hill Street, Los Angeles, CA 90012, Case No. 19STCV33261. The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

March 5, 2020

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**